CHAUNCY HAIR ET AL., APPELLANTS, V. IRA DAVENPORT
ET AL., APPELLEES.

FILED JUNE 8, 1905.   No. 13,802.

1. **Homestead:** One who purchases land with the *bona fide* intention
of making it his home, and who clearly manifests that intention,
so that those dealing with it or with him relating to it are put
upon notice, may thus impress it with a homestead character,
although because of some intervening obstruction he does not
take immediate actual possession thereof, if he occupies it with
his family within a reasonable time after the purchase.

2. ————. A person cannot at the same time have two homesteads,
nor can he have two places either of which at his election he
may claim as his homestead.

3. ————. The head of a family who has a homestead cannot acquire
a second homestead until the first has been abandoned or con-
veyed, or contracted to be conveyed, by an instrument which our
statute recognizes as legal and valid for that purpose.

APPEAL from the district court for Colfax county: CON-
RAD HOLLENBECK, JUDGE. *Reversed.*

*George W. Wertz,* for appellants.

*George H. Thomas, contra.*

DUFFIE, C.

In 1898 Ira Davenport, in his own right and as ex-
ecutor of the estate of John Davenport, contracted to sell
to Albert Busch the northeast quarter of section 5, town-
ship 2, range 2, in Colfax county, Nebraska. This contract
was assigned by Busch to the defendant Herman Eber-
hard April 9, 1902.   October 17, 1902, Eberhard entered
into a contract with Chauncy Hair to sell him the north
half of the quarter section, and on the same day made a
like contract with Henry Hamann to sell him the south
half of the quarter section.   This action is to enforce a
specific performance of these contracts.   Davenport, who
had in the meantime become sole owner of the land, was

made a party defendant, and answered, alleging his readiness to deed the premises to whomsoever the court might direct. Eberhard and his wife filed an answer, setting up a claim of homestead in the entire quarter section, and defended the case upon the theory that the premises constituted the homestead of the parties, and that, Mrs. Eberhard not having joined in the contracts of sale, the same were absolutely void. A decree went in favor of the Eberhards, from which the vendees in the contract of sale have taken an appeal.

It is undisputed that on April 9, 1902, when Eberhard took an assignment of his contract of sale from Busch, Eberhard owned and lived with his family on 80 acres of land in Stanton county, some miles distant from the land in controversy. He had lived there for some years, and it undoubtedly constituted his home and homestead. On April 7, 1902, two days prior to taking an assignment from Busch, Eberhard and his wife contracted to sell the 80 acres on which they lived to one Malena, but this contract of sale was not acknowledged. The contract provided that possession should not be given until the following March, when a deed was to be made upon the payment of the full consideration, Malena having paid $500 at the date of the contract. Eberhard and his wife continued to occupy this farm until the latter part of February, 1903, when they took possession of the Colfax county land in controversy, and were living thereupon when this action was commenced. Eberhard and his wife insist that they purchased the land in controversy for a home, and with the intention of occupying the same as their homestead immediately upon removing from the farm in Stanton county; and the only questions in the case are, first, can a person have two tracts of land, either of which at his election he may claim as his homestead; and, second, whether under the facts in this case the mere intention to occupy land purchased by the head of the family, unaccompanied by any physical act manifesting such intention, gives the premises a homestead character. which can be set up as a

defense against the enforcement of a contract for the sale of the premises made by the husband alone.

In *Wright v. Dunning,* 46 Ill. 271, 92 Am. Dec. 257, the court said:

"By our act, a person could not have two homes at the same time, both exempt, nor could he have two, either of which, at his election, would be exempt. The home must be such that it, and it alone, is within the protection of the statute."

Our homestead act (sec. 4, ch. 36, Comp. St. 1903; Ann. St. 6203), provides that "the homestead of a married person cannot be conveyed or incumbered unless the instrument by which it is conveyed or incumbered is executed and acknowledged by both husband and wife." And this provision is held to apply to a contract to convey a homestead. *Larson v. Butts,* 22 Neb. 370. The uniform holding in this state is that any conveyance or incumbrance upon a homestead not signed and acknowledged by both husband and wife is absolutely void. The contract by which Eberhard and his wife agreed to sell their Stanton county home to Malena was not acknowledged. It was therefore void. It could not be enforced. Malena could not enforce a deed, neither could Eberhard specifically enforce the contract against Malena. *Solt v. Anderson,* 63 Neb. 734. Undoubtedly, until their conveyance of this tract of land in 1903, and their removal to the land in controversy in this action, either Eberhard or his wife could assert a homestead claim in the premises, which the courts would be compelled to recognize and uphold.

In *Waggle v. Worthy,* 74 Cal. 266, 5 Am. St. Rep. 440, it was held that a homestead declaration, filed while the claimant has another homestead duly selected and never abandoned, is void. The fact that the first homestead was sold under execution and surrendered to the purchaser is immaterial, because, such sale being void, the homestead right is in no way affected thereby. In the body of the opinion it is said:

"But so far as this record shows, the sale to Jacobs was

of no effect. A homestead is exempt from execution, and if the land was worth more than $5,000 (which does not appear), the proceedings provided by the code for admeasuring the excess (Civ. Code, secs. 1245 *et seq.*) should have been taken. This not having been done, the attempted sale was void, the homestead still existed, and was not abandoned by the claimants moving off the premises. In this state, 'a homestead can be abandoned *only* by a declaration of abandonment, or a grant thereof, executed and acknowledged,' etc. (Civ. Code, sec. 1243.) It results that the first homestead was a valid and subsisting homestead at the time the second was attempted to be declared. A party cannot have two homesteads; and if he attempts to acquire a second while the first is in force, the second is void."

Our conclusion is that Eberhard in October, 1902, when the contracts in suit were made, had a homestead right in Stanton county which no one could successfully dispute or question, and, such being the case, he could not at the same time acquire another homestead right in Colfax county, and assert it against the parties seeking to enforce the contracts in suit. The law is undoubtedly settled in this state that one who purchases a tract of land with the *bona fide* intention of making it his home, and takes such active steps as his circumstances will allow toward its occupation, and actually occupies it within a reasonable time, may claim a homestead interest therein from the date of his purchase. *Hanlon v. Pollard,* 17 Neb. 368. Our statute also protects the proceeds arising from the sale of a homestead for six months, and, as a consequence, one may sell his homestead, and hold the money for six months for investment in another home. Undoubtedly, if Eberhard had made such a sale of his home in Stanton county as the statute recognizes and would enforce, he might immediately invest it in another tract of land; and if he in good faith intended to make such tract his home, and did so within a reasonable time, considering his circumstances, the homestead character of such second purchase would

be recognized and protected. While the Eberhards, husband and wife, both testify that the tract in Colfax county was purchased for the purpose of a home, there are many circumstances which tend to throw discredit upon their statements. Eberhard had said that he purchased the land as a speculation. He had listed it for sale, and in October he entered into the contracts with the claimants in the present action. There is no evidence to show that he made any improvements upon the land, or took any steps indicating that he intended to occupy it, or make it his home, unless, perhaps, the planting of some fruit trees may have been done prior to his moving onto the premises, but we cannot ascertain from the record when the fruit trees were planted; and so far as is disclosed by the testimony they may have been planted after he had contracted to sell the premises, or even later than that, after he had moved onto the place. It would be an unsafe rule to adopt to say that secret intentions formed in the mind of the purchaser, without any physical act manifesting such intention, would impress upon a tract of land a homestead character, which would either exempt it from levy under legal process or operate to defeat a sale made to other parties.

We recommend that the decree appealed from be reversed and the cause remanded to the district court for further proceedings not inconsistent with this opinion.

ALBERT and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree appealed from is reversed and the cause remanded to the district court for further proceedings not inconsistent with this opinion.

REVERSED.