PAXTON & GALLAGHER ET AL., APPELLANTS, V. JONATHAN J. SUTTON ET AL., APPELLEES.

FILED DECEMBER 9, 1897.  NO. 7563.

**Homestead Exemption.** A debtor may acquire a homestead, and hold it exempt from execution for debts created before its acquisition, but not then reduced to judgment, and this although the homestead was obtained by exchange for property which was liable for the payment of such debts.

APPEAL from the district court of Chase county. Heard below before WELTY, J. *Affirmed.*

*Howard M. Kellogg* and *Alfred W. Agee*, for appellants.

References: *Riddell v. Shirley*, 5 Cal. 488; *Randall v. Buffington*, 10 Cal. 491; *Pratt v. Burr*, 5 Biss. [U. S.] 36; *Bugg v. Russell*, 75 Ga. 837; *Wedgewood v. Withers*, 35 Neb. 583.

10

*A. B. Taylor, contra.*

A homestead is not liable for debts contracted before the homestead was purchased. (*Hanlon v. Pollard*, 17 Neb. 368; *Palmer v. Hawes*, 50 N. W. Rep. [Wis.] 341; *Jacobi v. Parkland Distilling Co.*, 43 N. W. Rep. [Minn.] 52; *Dortch v. Benton*, 3 S. E. Rep. [N. Car.] 638; *Tucker v. Drake*, 11 Allen [Mass.] 145; *O'Donnell v. Segar*, 25 Mich. 367; *North v. Shearn*, 15 Tex. 174; *Cipperly v. Rhodes*, 53 Ill. 346; *Culver v. Rogers*, 28 Cal. 521; *Randall v. Buffington*, 10 Cal. 491; *Backer v. Meyer*, 43 Fed. Rep. 702; *Kelly v. Sparks*, 54 Fed. Rep. 70; *Woodward v. People's Nat. Bank*, 31 Pac. Rep. [Colo.] 184; *Hines v. Duncan*, 79 Ala. 112.)

IRVINE, C.

Jonathan J. Sutton was engaged in the mercantile business at Aurora, in Hamilton county. On February 21, 1893, he was indebted to the plaintiffs in divers amounts for goods sold to him to replenish his stock. On that day he exchanged his stock of goods for 160 acres of land in Chase county. The title to 80 acres was taken in himself and to the remaining 80 in his wife. On March 6, 1893, he removed upon the land and has since been occupying it as a homestead. The plaintiffs very promptly reduced their claims to judgment, and on March 6 filed transcripts of their several judgments in the office of the clerk of the district court of Chase county. They then caused executions to be levied upon the land and afterwards filed the petition in this case, alleging that by reason of the conveyance to Mrs. Sutton and the claim of homestead the land could not be sold to advantage, and praying that their levies be declared valid and the land subjected to the payment of the judgments. The pleadings and admissions made on the trial left, so far as the homestead was concerned, really no contested issue except whether the purpose of Sutton in

making the exchange was to defeat his creditors. There was a finding for the defendants and judgment of dismissal. The court found that the land did not exceed $2,000 in value, so that it was exempt from judgment liens and execution or forced sale unless the special circumstances prevented the operation of the exemption privilege as to these judgments. It is contended that the sole object of Sutton in exchanging his goods for the land and removing upon it was to obtain the benefit of the exemption laws and thereby defeat his creditors. We shall assume that this was shown. Did it constitute such a fraud upon creditors as to estop him from asserting his homestead exemption?

In this state the homestead exemption may be claimed as well against debts existing when the homestead was acquired as against those created thereafter. (*Hanlon v. Pollard*, 17 Neb. 368.) The statute makes no distinction between the two classes of debts and the courts cannot create any. The right here depends upon the situation when judgment is recovered and not when the debt is created. (*Bowker v. Collins*, 4 Neb. 494; *Hanlon v. Pollard*, *supra*.) The homestead exemption cannot be claimed as against a judgment recovered before the land became a homestead, because in that case the lien of the judgment had attached, and the acquisition of a homestead character does not displace existing liens. And the law generally is so where the statute does not, as many statutes do, except pre-existing debts from the operation of the exemption. It follows that it is the legal right of a debtor to acquire a homestead, and in order to do so he must usually devote to that purpose money or property that is not exempt. Credit is ex tended or should be extended with a view to that right. If such be the debtor's absolute right then it would seem that his motive is immaterial. As in the case of the alienation of exempt property, it is held that such alienation cannot be set aside as fraudulent, because it cannot operate as a fraud; so here, if the right exists to pur-

chase exempt property with non-exempt, such purchase, cannot operate as a fraud upon creditors. For similar reasons the appropriation of all a debtor's property to pay a favored creditor is not a fraud upon the others except as the statute makes an actual fraudulent intent invalidate the transaction. The fact that the debt was incurred in the purchase of a part of the goods from the sale of which the exempt property was acquired does not affect the case, unless indeed the goods were bought with the intention of not paying for them and of converting them into exempt property for the purpose of accomplishing that object. In that case the goods might be reclaimed if the fraud were seasonably discovered, and it may be that if not discovered until after their exchange, the property for which they were exchanged might then be charged with the debt. Such a case would not be unlike that of one's stealing property and then claiming it as against the owner. But this case presents no such state of facts. It is true that it appears that a small part of the goods out of which some of the debts arose was not delivered until a few days after the sale of the stock, but these goods were not bought in contemplation of the sale or with the intent to defraud, so far as the evidence discloses.

A few cases are opposed to the views we have expressed,—notably *Pratt v. Burr*, 5 Biss. [U. S. C. C.] 36. The reasoning of that case would, however, defeat the exemption as against any pre-existing debt, and is based, as in other cases taking a similar view, on the injustice and apparent immorality of a claim of exemption under such circumstances. Such cases neglect the fundamental principle that the courts cannot set aside valid legislative acts or engraft amendments upon them merely because the judges deem the legislation unwise or even unjust. In all cases of exemptions the creditor suffers because the legislature has deemed the importance of protecting the family in its home and sustenance to be greater than that of enforcing the payment of debts.

The great weight of authority is, however, in accordance with the opinion we have indicated. In *Comstock v. Bechtel*, 63 Wis. 656, the question was squarely presented whether a conversion of non-exempt property into exempt, for the sole purpose of placing it beyond the reach of creditors, would subject the latter property to the payment of debts existing at the time of the conversion, and the court held that it would not, that the property from its character remained exempt and the only remedy of the creditor was by attacking the sale of the non-exempt property. *Cipperly v. Rhodes*, 53 Ill. 346, was a case like the one before us, even to the fact of the conveyance of the homestead to the wife, and the homestead was held exempt because "it was not a fraud on creditors to buy a homestead which would be beyond their reach." So in *Jacoby v. Parkland Distilling Co.*, 41 Minn. 227, the debtor's right was in such case affirmed, because "he is merely exercising a right which the law gives him, and subject to which every one gives him credit." Michigan holds to the same effect, the court saying: "There may be a moral wrong in thus keeping property from creditors, but if so it is one which the statute, on grounds of public policy and to prevent distressing families, has sanctioned in allowing the exemption, and therefore is not legally a fraud." (*O'Donnell v. Segar*, 25 Mich. 367.) And in California, after one decision indicating a contrary view, it is now settled that one may apply non-exempt property to the discharge of incumbrances on a homestead, and claim the whole homestead as exempt. (*Randall v. Buffington*, 10 Cal. 493; *In re Henkel*, 2 Sawyer [U. S. C. C.] 305.) The law is thus stated by Foster, J., in *Kelly v. Sparks*, 54 Fed. Rep. 70: "It seems to be well settled on principle and the preponderance of authority that an insolvent debtor, knowing himself to be insolvent, may acquire a homestead for himself and family, and hold the same exempt from his creditors, although purchased with non-exempt assets, and that fraud cannot be imputed to such an act.

\* \* \* Credit is given the debtor in full view of this comprehensive exemption." (See, too, *First Nat. Bank v. Glass*, 79 Fed. Rep. 706.)

In the view we have taken of the question discussed it follows that all the land would have been exempt if title had been taken in Sutton. He therefore had the right as against creditors to convey or cause to be conveyed a portion thereof to his wife, as the homestead can be claimed from the property of either. (Compiled Statutes, ch. 36, sec. 2.) It is unnecessary, therefore, to consider the special attack and special defense with reference to her right.

AFFIRMED.