DEANNA S. LANDON, APPELLANT, V. RAYMOND E. PETTIJOHN AND WENDY L. PETTIJOHN, HUSBAND AND WIFE, APPELLEES.

438 N.W.2d 757

Filed April 21, 1989.   No. 87-373.

Dennis L. Wills for appellant.

James E. Case, of Case, Reinsch & Slattery, P.C., for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

Plaintiff, Deanna S. Landon, appeals from an order of the district court for Cass County sustaining appellees' motion for summary judgment.

On June 16, 1985, the appellant and Raymond E. and Wendy L. Pettijohn, appellees, signed a uniform purchase agreement for the sale of appellees' home to the appellant. Appellees, husband and wife, signed the document, but their signatures were not acknowledged by a notary public. Two and one-half months later appellees rescinded the agreement.

Appellant filed suit for specific performance or damages in the alternative. Appellees moved the court for summary judgment on the basis that the executed agreement was subject

to the homestead act, specifically Neb. Rev. Stat. § 40-104 (Reissue 1988), and therefore was void and unenforceable because the appellees' signatures were not acknowledged before a notary public. The motion was granted, resulting in this appeal.

Appellant's seven assignments of error can be condensed into two. She alleges the district court erred in (1) sustaining the appellees' motion for summary judgment and (2) failing to find that § 40-104, as applied to the appellant, is unconstitutional under U.S. Const. amend. XIV, § 1, and Neb. Const. art. I, § 25.

> In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. [Citations omitted.]
>
> Moreover, summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

*Bedrosky v. Hiner*, 230 Neb. 200, 201-02, 430 N.W.2d 535, 537-38 (1988).

In her first assignment of error, appellant contends that summary judgment, on the basis of § 40-104, was improperly granted because there was insufficient evidence as a matter of law to establish the elements of the statute. Section 40-104, as relevant to this action, provides that "[t]he homestead of a married person cannot be conveyed or encumbered unless the instrument by which it is conveyed or encumbered is executed and acknowledged by both husband and wife . . . ." In the case at bar, for the trial court to grant a summary judgment pursuant to this statute, it has to find as a matter of law that (1) the property must be a "homestead"; (2) the property must be owned by a married person; and (3) the conveyance or encumbrance of the real estate was executed but was not acknowledged by both the husband and wife.

An examination of the record reveals that appellees' answer

to appellant's amended petition alleges, as a new matter, that the property in question was the homestead of the appellees. Appellant did not file a reply. Neb. Rev. Stat. § 25-842 (Reissue 1985) in pertinent part provides that "every material allegation of new matter in the answer not controverted by the reply, shall, for the purposes of the action, be taken as true; but the allegation of new matter in the reply shall be deemed controverted by the adverse party as upon a direct denial or avoidance." Therefore, since the appellant failed to file a reply controverting appellees' allegation that the property was their homestead, we deem the allegation to be taken as true. To the extent that *Watmore v. Ford*, 229 Neb. 121, 425 N.W.2d 612 (1988); *Wood v. Tesch*, 222 Neb. 654, 386 N.W.2d 436 (1986); *Snyder v. Fort Kearney Hotel Co., Inc.*, 182 Neb. 859, 157 N.W.2d 782 (1968); and *Dorland v. Dorland*, 175 Neb. 233, 121 N.W.2d 28 (1963); hold otherwise, they are overruled. Accordingly, the allegation, taken as true, is sufficient evidence to support a finding that the property in question is a homestead.

In regard to the requirement that the property be owned by a married person, we begin our analysis by noting the pleadings conclusively establish that the appellees owned the property and that the uniform purchase agreement, submitted with the pleadings, was signed by Raymond and Wendy Pettijohn. Neb. Rev. Stat. § 40-102 (Reissue 1988), governing the selection of property for homestead status, provides:

> If the claimant be married, the homestead may be selected from the separate property of the husband, or with the consent of the wife from her separate property. When the claimant is not married, but is the head of the family within the meaning of section 40-115, the homestead may be selected from any of his or her property.

This statute, in addition to delineating which property may be selected as the homestead, defines the persons who are entitled to make the selection. Under § 40-102, a homestead can only arise where the claimant is married or, if not married, where the claimant is the head of the family as defined by Neb. Rev. Stat. § 40-115 (Reissue 1988). Since we have already determined that

the property is a homestead, it logically follows that the appellees must either be married or be unmarried and each qualify as the "head of the family." However, it is legally impossible to have two persons qualify as the "head of the family" because then each person could raise a claim of homestead in the same parcel of property. Analogizing to the rule that "[a] person cannot have two homesteads, nor can he have two places either of which at his election he may claim as a homestead," *Travelers Indemnity Co. v. Heim*, 218 Neb. 326, 330, 352 N.W.2d 921, 924 (1984), we note that two separate homesteads cannot exist in the same parcel of land. Thus, by inference, the appellees must be husband and wife. In addition, we note that the record indicates that in every pleading, by both parties, the appellees are listed in the caption as "RAYMOND E. PETTIJOHN and WENDY L. PETTIJOHN, Husband and Wife, Defendants." We find, under the particular facts of this case, that appellant conceded the issue of whether the appellees were husband and wife and that there is sufficient evidence to establish the second element of the statute.

Concerning the last requirement, appellant contends that § 40-104 is inapplicable because the uniform purchase agreement, which called for conveyance of the title of the property at closing, only created a contractual obligation of the parties and did not create an interest in the real estate. Appellant's argument is without merit. In *McIntosh v. Borchers*, 196 Neb. 109, 112, 241 N.W.2d 534, 537 (1976), we said: "This court has consistently held that [§ 40-104] applies to *contracts for sale* as well as to conveyances or encumbrances . . . ." (Emphasis supplied.) See *Christensen v. Arant*, 218 Neb. 625, 358 N.W.2d 200 (1984) (§ 40-104 applies to uniform purchase agreements). The purchase agreement shows that it was not acknowledged before a notary public. Accordingly, we hold that there was sufficient evidence as a matter of law for the trial court to grant a summary judgment motion on the basis of § 40-104.

In appellant's second assignment of error she argues that even if this court determines that summary judgment is proper, the cause should still be reversed by finding § 40-104 unconstitutional under U.S. Const. amend. XIV, § 1, and Neb.

Const. art. I, § 25. Though appellees challenge the manner in which this issue was raised, we note that, because the appellant did raise the question regarding the constitutionality of § 40-104 during the hearing on the summary judgment motion, we will therefore review this issue. *In re Estate of Snyder*, 217 Neb. 356, 348 N.W.2d 136 (1984).

Appellant contends that "Sec. 40-104 is discriminatory in its classification of married property owners and non-married owners, since only married property owners are required to have any transfer of an interest of real estate executed and acknowledged by a notary." Brief for appellant at 18. Specifically, appellant complains that appellees have used § 40-104 as a sword to defeat legally binding duties that they have voluntarily entered into, and are exploiting the statute contrary to its intended legislative purpose. Arguing that the statute has "outlived its usefulness" and is "outmoded," appellant urges this court to declare § 40-104 unconstitutional.

"In examining the validity of a legislative act, we must keep in mind the oft-declared rule to the effect that in construing an act of the Legislature all reasonable doubts must be resolved in favor of its constitutionality." *State ex rel. Douglas v. Nebraska Mortgage Finance Fund*, 204 Neb. 445, 452, 283 N.W.2d 12, 18 (1979). The U.S. Supreme Court and the Nebraska Supreme Court have stated that the government is not foreclosed from classifying persons or from differentiating one class from another when enacting legislation. *State v. Michalski*, 221 Neb. 380, 377 N.W.2d 510 (1985), citing *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 31 S. Ct. 337, 55 L. Ed. 369 (1911). Because the nature of the classification and the rights affected are not based on sex, *Craig v. Boren*, 429 U.S. 190, 97 S. Ct. 451, 50 L. Ed. 2d 397 (1976); alienage, *Mathews v. Diaz*, 426 U.S. 67, 96 S. Ct. 1883, 48 L. Ed. 2d 478 (1976); illegitimacy, *Trimble v. Gordon*, 430 U.S. 762, 97 S. Ct. 1459, 52 L. Ed. 2d 31 (1977), *questioned on other grounds Lalli v. Lalli*, 439 U.S. 259, 99 S. Ct. 518, 58 L. Ed. 2d 503 (1978); a suspect class (race), *Loving v. Virginia*, 388 U.S. 1, 87 S. Ct. 1817, 18 L. Ed. 2d 1010 (1967); or a fundamental right (voting), *Harper v. Virginia Bd. of Elections*, 383 U.S. 663, 86 S. Ct. 1079, 16 L. Ed. 2d 169 (1966), this court's scope of review, as

appellant correctly acknowledges, is limited to determining whether there is a rational basis for the classification created by § 40-104. See, *In re Statham*, 483 F.2d 436 (9th Cir. 1973), *cert. denied* 414 U.S. 1069, 94 S. Ct. 578, 38 L. Ed. 2d 474 (homestead statute, distinguishing between widowers and other single persons without dependents, subject to rational basis review); *Beard v. Montgomery Ward & Co.*, 215 Kan. 343, 524 P.2d 1159 (1974) (homestead statute, distinguishing between families and single persons, subject to rational basis review). See, e.g., *State v. Michalski, supra*, citing *Vance v. Bradley*, 440 U.S. 93, 99 S. Ct. 939, 59 L. Ed. 2d 171 (1979) (economic or social legislation subject to rational basis review); 40 Am. Jur. 2d *Homestead* § 7 (1968).

The Nebraska Supreme Court has clearly recognized that the preservation of the family is the primary purpose of homestead legislation. *Bowker v. Collins*, 4 Neb. 494 (1876). As was noted in Foster, *The Nebraska Homestead*, 3 Neb. L. Bull. 109, 112 (1924):

> The object of homestead legislation is to conserve the family by provisions which tend to keep a roof over it. . . . The policy back of the statutes is to promote the general welfare of the commonwealth by aiding in the preservation of the family, as the oldest, most indispensible of human institutions and one on whose welfare that of the commonwealth depends. The ultimate beneficiary is the state; the immediate beneficiary is the family owning a home. All members of the family, the head as well as dependents, derive benefits from this legislation.

In conformity with this policy, "[t]his court has often said that the homestead law should be liberally construed in favor of those for whose benefit it was enacted." *Horn v. Gates*, 155 Neb. 667, 671, 53 N.W.2d 84, 86 (1952), citing *First Nat. Bank of Tekamah v. McClanahan*, 83 Neb. 706, 120 N.W. 185 (1909); *Hanlon v. Pollard*, 17 Neb. 368, 22 N.W. 767 (1885); *Bowker v. Collins, supra*. We think that the classification distinguishing between married property owners and nonmarried property owners, as contained in § 40-104, is rationally related to the legislative policy of preservation of the family. By requiring the

parties to acknowledge their signatures, the Legislature was preventing the possibility of the homestead being conveyed or encumbered by fraud, thereby preserving the family "by keeping a roof over it." In *Paxton v. Sutton*, 53 Neb. 81, 84, 73 N.W. 221, 222 (1897), this court stated in regard to the homestead legislation that "courts cannot set aside valid legislative acts or engraft amendments upon them merely because the judges deem the legislation unwise or even unjust." In sum, we cannot say that the classifications in § 40-104 are arbitrary and without rational basis.

Accordingly, the decision of the district court is affirmed.

AFFIRMED.